IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


MARION KNIGHT                                                                    PLAINTIFF

      v.                            CIVIL NO. 2:17-CV-2117

NANCY A. BERRYHILL, [1] Acting Commissioner,
Social Security Administration                                                   DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Marion Knight, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his current application for DIB and SSI on December 4, 2014, alleging an inability to work since November 5, 2014, due to the following conditions: head injury' issues with memory, vision, ability to focus, and ability to concentrate; issues with

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

confusion and completing simple tasks; headaches; difficulty making decisions; and trouble sleeping. (Tr. 70, 84, 100-101, 114-115). For DIB purposes, Plaintiff maintained insured status through December 31, 2018.[2] (Tr. 70, 100). An administrative hearing was held on January 25, 2016, at which Plaintiff appeared with counsel and testified. (Tr. 31-49). Barbara Hubbard, Vocational Expert (VE), also testified. (Tr. 49-53).

In a written opinion dated May 26, 2016, the ALJ found that the Plaintiff had the following severe impairments: headaches, anxiety, and cognitive disorder. (Tr. 14). However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 14-17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work, except that:

> [H]e can do simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed. He can respond to usual work situations, routine work changes and supervision that is simple, direct and concrete.

(Tr. 17-21). With the help of VE testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work as a truck driver. (Tr. 22). However, based on the Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of work as a hotel cleaner, routing clerk, and marking clerk. (Tr. 22-23). Ultimately, the ALJ concluded that the Plaintiff had not been under a disability within the meaning of the Social Security Act from his alleged onset date of November 5, 2014, through June 1, 2016, the date of the ALJ's decision. (Tr. 23).

---

[2] The Court notes that in the ALJ's opinion, the ALJ found that Plaintiff's date last insured was December 31, 2019; however, Plaintiff's disability paperwork indicates that the date last insured was December 31, 2018. (Tr. 14, 70, 100).

Subsequently, Plaintiff requested a review of the hearing decision by the Appeals Council, which was denied on May 26, 2017. (Tr. 1-4). Plaintiff filed a Petition for Judicial Review of the matter on July 13, 2017. (Doc. 1). Both parties have submitted briefs, and this case is before the undersigned for report and recommendation. (Docs. 15, 16).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.    Evidence Submitted:**

At the hearing before the ALJ on January 25, 2016, Plaintiff testified that he was born in 1967 and had obtained his GED. (Tr. 33). Plaintiff's past relevant work consisted of work as a truck driver. (Tr. 50).

Prior to the relevant time period, Plaintiff was treated conservatively on two occasions for depression and hyperlipidemia, and on another occasion, he was also treated conservatively for a common cold, abdomen pain, and nausea. (Tr. 320, 324, 328-329).

Medical evidence during the relevant time period reflects that on April 14, 2015, Plaintiff underwent a Mental Diagnostic Evaluation by Dr. Terry Efird. (Tr. 342-346). Dr. Efird's notes reveal that Plaintiff reported the following: that he was in a motor vehicle accident in 2011; that he currently had difficulty with memory and confusion; that he suffered from depression; that he had a decreased interest in activities; that he had sleep problems; that he had problems concentrating and making decisions; that he had problems with anxiety/nervousness; that he endorsed feeling detached from others; that he endorsed feelings of irritability, hypervigilance, and an exaggerated startle response. (Tr. 342). Plaintiff denied any history of inpatient or outpatient mental health treatment; reported that he had been on

3

psychiatric medications for approximately fourteen years; reported that he exercised a couple hours per day; and reported that his current psychiatric medication was beneficial and had no side effects. (Tr. 343). Plaintiff also reported that he had obtained a GED; that he had the ability to perform basic self-care tasks independently; and that he had the ability to perform household chores slowly but adequately. (Tr. 343). Plaintiff reported that he had primarily worked as a truck driver; that he last worked full-time in November 2014 when he was terminated from his employment; that he had not worked since that time; and that he had some difficulty in his relationships with coworkers and supervisors. (Tr. 343).

Dr. Efird's report reflected that Plaintiff had moderate to marked difficulty with cognitive efficiency; that Plaintiff reported significant symptom-based criteria for a diagnosis of PTSD; and that Plaintiff had some features of depression. (Tr. 345). Dr. Efird diagnosed Plaintiff with cognitive disorder, PTSD, and depressive disorder, with a GAF score of 39-49. (Tr. 345). Dr. Efird opined that Plaintiff communicated and interacted in a reasonably socially adequate manner; however, he also noted that Plaintiff's cognitive struggles and degree of frustration would likely limit his range of social interactions. (Tr. 345). Dr. Efird opined that Plaintiff communicated most basic information in a reasonably intelligible and effective manner; however, difficulty communicating complex types of information effectively would be considered highly probable. (Tr. 345). Dr. Efird opined that Plaintiff had the capacity to perform basic cognitive tasks required for basic work like activities; however, remarkable difficulty with complex types of cognitive tasks was probable. (Tr. 345). Dr. Efird noted difficulty sustaining attention and concentration over long time frames was probable. (Tr. 345). Dr. Efird opined that Plaintiff generally completed most tasks under the structured and supportive conditions of the evaluation; however, difficulty persisting with tasks over longer

4

time frames was considered probable.  Dr. Efird also found that Plaintiff's mental pace of performance was moderately to markedly slow at times and that he would have difficulty consistently performing basic work like tasks within a reasonable time frame.  (Tr. 346).  Lastly, Dr. Efird opined that Plaintiff was able to manage funds without assistance.  (Tr. 346).

On April 15, 2015, Plaintiff saw Dr. Thinh Nguyen at River Valley Primary Care to establish care and to obtain refills on his medications.  (Tr. 352).  Plaintiff's physical examination, as well as his mental status exam, were normal. (Tr. 353).  Plaintiff was assessed with hyperlipidemia, depression with anxiety, and traumatic brain injury.  Dr. Nguyen refilled Plaintiffs medication for anxiety and ordered a CBC with differential, a comprehensive metabolic panel, a lipid test panel, and a follow up visit in six months.  (Tr. 354).

On April 22, 2015, Plaintiff saw Dr. Nguyen for a follow up on his cholesterol and lab work. (Tr. 351).  Dr. Nguyen noted that Plaintiff had been on medication to lower his cholesterol (simvastatin) in the past, but that the medication had an adverse effect.  (Tr. 351).  However, Plaintiff reported that he would like to get back on a statin drug.  (Tr. 351).  Plaintiff's physical examination, which included a mental status exam, was normal. (Tr. 352).  Dr. Nguyen assessed Plaintiff with hyperlipidemia and prescribed Pravastatin. (Tr. 352).

On April 27, 2015, Dr. Diane Kogut, Ph.D., performed a Psychiatric Review Technique, where she opined that Plaintiff had mild restriction of his activities of daily living; moderate difficulty in maintaining social function; moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 76, 90).  In Dr. Kogut's Mental RFC, she concluded that, based on Plaintiff's medical record, he had the capacity for unskilled work where interpersonal contact was incidental to work performed,

e.g., assembly work; complexity of tasks was learned and performed by rote, few variables, little judgment; and supervision required was simple, direct and concrete. (Tr. 80, 94).

On June 25, 2015, Plaintiff saw Dr. Nguyen with complaints of headaches and issues with balance, both as a result of an old head injury. (Tr. 350). At that visit, Plaintiff requested a referral to a neurologist. (Tr. 350). Dr. Nguyen assessed Plaintiff with traumatic brain injury and headaches and referred him to neurology for his persistent headaches.

On August 7, 2015, Dr. Jerry R. Henderson, Ph.D. performed a Psychiatric Review Technique, where he opined that Plaintiff had the following: mild restriction of his activities of daily living; moderate difficulty in maintaining social function; moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 106, 120). Dr. Henderson also performed a Mental RFC, where he concluded that, based on Plaintiff's medical record, he had the capacity for unskilled work where interpersonal contact was incidental to work performed, e.g., assembly work; complexity of tasks was learned and performed by rote, few variables, little judgment; and supervision required was simple, direct and concrete. (Tr. 110, 124).

On February 22, 2016, Plaintiff underwent a Neuropsychological Evaluation by Dr. Patricia J. Waltz, Ph.D. at Consulting Psychology of Western Arkansas, Inc. (Tr. 359-363). Plaintiff reported to Dr. Waltz that he had suffered from short-term memory loss and sleep disturbance since his 2011 accident. (Tr. 359). Plaintiff reported that he was currently suffering from headaches, for which he was taking medication. (Tr. 360). Plaintiff shared with Dr. Waltz that he had suffered from depression for fourteen years, but that he had not had any inpatient or outpatient treatment for his mental health issues. (Tr. 360). Plaintiff shared

6

that he had no problems with personal care; that while he did not go many places, he would occasionally go to the grocery store with his son; that he spent time with only family members; that he was currently able to drive and had a driver's license; and that, although he believed he could perform household chores, his mother assisted him with those chores. (Tr. 360). Plaintiff reported that his appetite was "good;" that he was exercising on a stationary bike weekly; that his mood was "okay"; that he did not feel depressed, but that he had some feelings of anxiety. (Tr. 361).

During the examination, Dr. Waltz observed that Plaintiff had a dramatic presentation; that his effort was minimal; that test results were considered to be an underestimate of his true ability; and that he had a very slow personal pace, which could have been influenced by medication side effects. (Tr. 361). Dr. Waltz administered several tests and concluded the following: that Plaintiff demonstrated a mixed picture on a comprehensive neuropsychological evaluation; that his effort was minimal and test results were an underestimate of his true ability; that the level of impairment that he demonstrated would not be consistent with his report of a mild concussion with no medical care and ability to return to work as a truck driver for a period of time; that he had significant secondary gain in exaggerating symptoms, including a monetary settlement and a lack of responsibility in his home; that even though test scores suggested at least a moderate cognitive impairment, Plaintiff still drove without problem and was able to manage money; and that his math score on the WRAT-4 would suggest he could manage a simple budget. (Tr. 361-363). Dr. Walz also noted that she was asked to complete a medical source statement, but that she was unable to determine Plaintiff's level of functioning given the likely exaggeration of symptoms. (Tr. 363).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff's sole argument on appeal is that the ALJ erred in making his RFC determination. (Doc. 15, pp. 1-5).

    **A.    Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in

9

the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In addressing Plaintiff's credibility, the ALJ noted Plaintiff's claim that since his 2011 accident, he had suffered from memory problems, issues with his balance, and headaches. (Tr. 37). Plaintiff testified that prior to his 2011 accident, he was employed as a truck driver at OK Foods. (Tr. 33). Plaintiff stated that he continued to work at OK Foods for several years after his accident and was fired in 2014 from his truck driving position because he neglected to obtain repairs on a truck. (Tr. 37). Plaintiff testified that when he was working, OK Foods' staff would assist him with paperwork from his truck route. (Tr. 38). Plaintiff testified that at the time of the hearing, he was able to drive, but drove very slowly; that he would go to Walmart when his son accompanied him; that due to his memory problems, he had to keep handwritten notes; and that he had trouble comprehending what he had read. (Tr. 42-47). However, the ALJ also noted that despite Plaintiff's claims, Plaintiff reported that he had no problems with personal care; that he could wash clothes, run the dishwasher, and clean the house; that he could pay bills, manage a savings account, and use a checkbook or money order; that he would spend time with others on a weekly basis; that he had no problems getting along with family, friends, neighbors, and others; and that he had no problem getting along with authority figures. (Tr. 20-21, 248-254). Also in his function report, Plaintiff stated that he took care of his thirteen year old son; that he would take his son to school and pick him up from school; that he would attend school activities, sporting events, movies; that he would prepare simple meals daily;

that he would go outside every day; and that while he could not pay attention for long periods of time, he could finish what he started. (Tr. 247-254).

Plaintiff's mother also submitted a Third Party Function Report.  In that report, she stated that Plaintiff had no problems with personal care; could perform household chores; could prepare simple meals; could drive a car; could go out alone; could shop in stores for food; and could handle his own finances. (Tr. 266-271).  She further reported that Plaintiff spent time with others; had no problems getting along with people in general, including authority figures; and was able to finish what he started.  (Tr. 272-278).

With respect to Plaintiff's mental impairments, the record demonstrates that Plaintiff was treated conservatively with medication for his depression and anxiety.  Moreover, the record demonstrated that Plaintiff's medication improved his symptoms of depression and anxiety.  Impairments that can be controlled with treatment or medication are not disabling.  See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment controllable with treatment or medication is not considered disabling).

Based on the medical records in this case, Plaintiff had been treated for depression and/or anxiety and was prescribed Paxil (paroxetine). (Tr. 318).  Medical records from IMWell Health in April and May of 2014 reveal that Plaintiff's depression/anxiety was stable on the medication. (Tr. 322, 326).  Plaintiff reported to Dr. Terry Efird on April 14, 2015, that he had been on medication for depression for fourteen years; however, Plaintiff also denied that he had any history of inpatient or outpatient mental health treatment. (Tr. 342-343).  On February 22, 2016, Plaintiff reported to Dr. Patricia Walz that he had no chronic illnesses, but stated that he had suffered from depression for fourteen years; that he had not undergone any inpatient

11

hospitalization or any counseling for his depression; and that he did not feel depressed at the time of the evaluation, but that he did have some anxiety. (Tr. 359-361).

With respect to Plaintiff's cognitive disorder, Plaintiff testified that he was involved in a motor vehicle accident in 2011, and since that time, has struggled with issues related to his memory and his balance. (Tr. 32). Plaintiff's Function Report revealed that while he had trouble with short-term memory and often kept notes as reminders, Plaintiff also reported that he was able to care for his thirteen year-old son; would attend school functions and sporting events without anyone to accompany him; needed no reminders to take his medicine or to attend to his personal needs; had no problem with personal care; prepared simple meals daily; would do household chores daily without help or encouragement; would exercise daily; would work mind-games and puzzles daily; could walk, could drive and ride in a car; could go out alone; could shop in stores for food; could manage his finances; could finish what he started; could follow instructions if he was able to refer back to the instructions; and could take notes and follow spoken instructions. (Tr. 247-254). The record also demonstrates that Plaintiff was able to continue working for several years after his 2011 accident, until he was terminated by his employer in 2014 for neglecting to obtain repairs on a truck. (Tr. 37). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively up on that claimant's credibility." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010 (citing Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)).

With respect to Plaintiff's physical impairments, while Plaintiff testified that he suffered from headaches, medical records showed minimal medical treatment for headaches. Further, Dr. Nguyen's notes from June 3, 2015, indicated that Plaintiff was taking over the counter Acetaminophen for his headache pain. (Tr. 350). A record of minimal medical

treatment is inconsistent with Plaintiff's subjective complaints. See Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (a claimant's subjective allegations may be discredited by evidence they have received minimal medical treatment and/or has taken only occasional pain medications).

Although it is clear that Plaintiff suffers some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B. ALJ's RFC Determination:

Plaintiff asserts on appeal that the ALJ erred in his RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform a light range of work, except that he could do work involving simple, routine, repetitive tasks in a setting where interpersonal contact was incidental to the work performed; where he could respond to usual work situations, routine work changes; and where supervision was simple, direct and concrete, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of the non-examining medical providers.

In making the RFC determination, the ALJ specifically addressed both the Mental Diagnostic Evaluation by Dr. Terry Efird, as well as the Neuropsychological Evaluation by Dr. Patricia Walz. The ALJ noted that while Dr. Efird found Plaintiff to be quite limited, he nevertheless stated that Plaintiff communicated and interacted in a socially adequate manner during the evaluation; that Plaintiff was capable of communicating most basic information in a reasonably intelligible and effective manner; that Plaintiff had the capacity to perform basic cognitive tasks required for basic work like activities; and that Plaintiff was able to complete most of the tasks of the evaluation. (Tr. 20). The ALJ noted that Dr. Walz administered several objective tests; however, Dr. Walz considered Plaintiff's effort on these tests to be minimal. (Tr. 20). Dr. Walz was unable to administer the full Wechsler Memory Scale, Fourth Edition because Plaintiff had such slow personal pace, and Dr. Walz opined that the Plaintiff's other test results underestimated his true ability. (Tr. 20). Dr. Walz noted the lack of medical records provided from Plaintiff's 2011 accident, and the minimal treatment records from 2014 and 2015. (Tr. 20). Dr. Walz opined that if Plaintiff were limited to the extent he alleged, she would expect a greater level of medical treatment and that Plaintiff would not have been able to return to work after the accident. (Tr. 20). The ALJ noted Dr. Walz's opinion that secondary gain was a significant factor in Plaintiff's case. (Tr. 20). Dr. Walz also noted that while the

14

test results would indicate a moderate level of cognitive impairment, Plaintiff was able to drive without problems and was able to manage money. (Tr. 20).

The ALJ also considered Plaintiff's visits to IMWell Health in January, April, and May of 2014, where Plaintiff was treated conservatively on two occasions for depression and hyperlipidemia, and on another occasion, for a common cold, abdomen pain, and nausea. (Tr. 320, 324, 328-329). At each visit, Plaintiff's physical and psychological examinations were normal. (Tr. 320, 323-324, 328).

The ALJ also noted that Plaintiff was seen by Dr. Nguyen in April and June of 2015. Dr. Nguyen assessed Plaintiff with hyperlipidemia, depression with anxiety, and traumatic brain injury and prescribed conservative treatment. (Tr. 350, 351, 354). At the June 2015 visit, Plaintiff complained of headaches, problems with memory on occasion, and problems with balance. (Tr. 350).

Furthermore, the ALJ considered and gave great weight to the opinions of the non-examining medical consultants, Drs. Diane Kogut and Jerry Henderson, who determined that Plaintiff had severe impairments of anxiety and affective disorders and found that the medical record supported Plaintiff's capacity for work where interpersonal contact was incidental to the work performed, the complexity of tasks was learned and performed by rote with few variables and little judgment involved. (Tr. 80, 94, 110, 124). The ALJ gave great weight to these opinions, as the findings were consistent with the evidence as a whole. (Tr. 21).

The Court notes that Plaintiff sought very little treatment for his mental impairments. See Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (a claimant's subjective allegations may be discredited by evidence they have received minimal medical treatment and/or has taken

15

only occasional pain medications).  While Plaintiff was seen at IMWell Health in Fort Smith on three occasions, where he had complaints of mood problems or depression, he was treated conservatively with medication.  See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). In April of 2015, Dr. Nguyen noted that Plaintiff's depression and anxiety were stable.  (Tr. 354).  While Plaintiff reported that he had been on medication for his depression for fourteen years, there is nothing in the record to indicate that Plaintiff received in-patient treatment or counseling during the relevant time period for his depression or anxiety.  (Tr. 360).  The lack of medical evidence supports the ALJ's mental RFC findings.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability).

The record also reflects that Plaintiff was able to work for several years following his 2011 accident with these conditions.  Plaintiff's reported activities of daily living also support the ALJ's determination that he could perform light work with certain non-exertional limitations.  Specifically, Plaintiff reported that he cared for his thirteen year old son; that he had no problems with his own personal care; that he could perform household chores; that he could manage his finances; that he prepared simple meals daily; that he went outside every day; that he would take his son to school and pick him up from school; and that he would attend school activities, sporting events, movies.  (Tr. 20-21, 247-254).  Moreover, Plaintiff reported that while he could not pay attention for long periods of time, he could finish what he started; that he spent time with others on a weekly basis; that he had no problems getting along with family, friends, neighbors, and others; and that he had no problem getting along with authority figures. (Tr. 247-254).  Furthermore, the ALJ noted that Dr. Efird's evaluation notes reflect

that Plaintiff endorsed the ability to shop independently, to handle his personal finances, and to perform most activities of daily living adequately. (Tr. 345). Plaintiff reported to Dr. Walz that he had no problems with personal care, that he was able to drive without issue, and that he was able to manage his finances. (Tr. 360, 363).

Upon careful review of the record, the Court finds that there was substantial evidence to support the ALJ's RFC determination of light work with non-exertional limitations.

### C. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a hotel cleaner, a routing clerk, and a marking clerk. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal**

**questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of April, 2018.

                                                      /s/ *Erin L. Wiedemann*
                                                      HON. ERIN L. WIEDEMANN
                                                      UNITED STATES MAGISTRATE JUDGE